**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

| | |
|---|---|
| **UNITED STATES OF AMERICA** f/u/b/o<br>**TIP TOP CONSTRUCTION CORP.**,<br><br>        Plaintiff,<br><br>  v.<br><br>**CMGC BUILDING CORP.** and<br>**ENDURANCE AMERICAN INSURANCE COMPANY**,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **CIVIL NO. 2017-_____** |

## COMPLAINT

Plaintiff United States of America, f/u/b/o Tip Top Construction Corp., through its attorneys, hereby files this Complaint against Defendants CMGC Building Corp. and Endurance American Insurance Company:

### PARTIES

1. The Plaintiff, United States of America f/u/b/o Tip Top Construction Corp. ("Tip Top" or "Top Top") is a U.S. Virgin Islands corporation with its principal place of business at 5064 Mount Welcome, Christiansted St. Croix 00820.

2. Defendant CMGC Building Corp. ("CMGC") is a New Hampshire corporation with its principal place of business at 360 Harvey Road, Manchester, New Hampshire 03103.

3. Defendant Endurance American Insurance Company ("Endurance") is a Delaware corporation with its principal place of business at 750 Third Avenue, New York, New York 10017.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and the Miller Act, 40 U.S.C. § 3131 through § 3134, and also has jurisdiction pursuant to 28 U.S.C. § 1332 by virtue of the diversity of citizenship of the parties.

5. The amount in controversy exceeds $75,000.00.

6. Venue is proper in this Court under 40 U.S.C. § 1333(b)(3)(B) and 28 U.S.C. § 1391.

## STATEMENT OF FACTS

7. On or about August 21, 2014, Defendant CMCG entered into a contract with the United States of America for the design and construction of a building known as SARI Project & CSO Building.   Upon completion, the building was to be used by the National Park Service as a "Costal Studies Outpost" facility, dock and road improvements.

8. The building site was Salt River, St. Croix, U.S. Virgin Islands.

9. The original contract price was $1,288,271.00 and the government contract number was P14C00355.

10. CMGC, together with Endurance, duly executed and delivered to the United States of America a payment bond for the protection of all persons supplying labor, material and equipment in the prosecution of work provided for in said contract.

11. The payment bond was executed in accordance with the provisions of the United States Code, Title 40, § 3131, et seq.

12. On or about July 29, 2015, CMGC entered into a written subcontract with Tip Top (the "Subcontract").

13. The Subcontract provided that work would commence on August 4, 2015 and be completed by December 3, 2015.

2

14. CMGC was the general contractor on the Project and Tip Top was a first tier, direct subcontractor.

15. Under the terms the Subcontract, Tip Top was to provide labor, materials and equipment for debris removal, hall road repairs and enhancements, construction of a boat ramp from existing slabs and construction of a concrete building pursuant to the specified scope of work and exhibits to the contract.

16. Under the terms of the Subcontract, CMGC was to pay Tip Top the sum of Six Hundred and Fifty-One Thousand and Sixty Three Dollars and Forty Two Cents ($651,063.42) for Tip Top's work on the Project.

17. CMGC issued several contract change directives which increased Tip Top's work and compensation during Tip Top's performance of the contract.

18. CMGC negotiated increased quantities for items of work, including but not limited to: additional "filter fabric" sediment control ($1,800.00), increased rubble pile removal from 110 cubic yards to 2386 cubic yards, and construction of a "Boat Ramp" with cast–in-place concrete versus reusing existing slabs on site for ($21,563.00).

19. CMGC issued one contract modification which increased Tip Top's contracted work on October 2, 2015 for ($88,605.00), and which increased the subcontract value to ($739,668.42).

20. CMGC provided Tip Top with a construction schedule to follow on June 29, 2015 which mandated that the SARI building structure be completed by December 1, 2015.

21. Tip Top programmed and assigned a four-man work crew sufficient to prosecute and complete the work according to the defendant's stipulated schedule.

22. Through no fault of its own, Tip Top's contracted work was not finished by

3

the contracted completion date of December 3, 2015.

23. CMGC and the National Park Service delayed the start of the SARI Outpost Building until the end of February 2016, at which time Tip Top inquired of CMGC if Tip Top needed to accelerate Tip Top's subcontracted work and increase the proposed manpower to supplement the four-man work crew that Tip Top planned on using originally. CMGC indicated that no manpower increase was or acceleration was warranted to meet the new February 2016 completion date.

24. The National Park Service extended CMGC's contract period of performance via two contract modifications to September 30, 2016, to cover the delays that were encountered, which prevented Tip Top from starting the SARI Outpost Building as originally contracted.

25. CMGC did not extend the change orders that it received from the government for contract performance period extensions that it received by granting Tip Top equal Subcontract performance period extensions.

26. CMGC, under directive of the National Park Service, made multiple changes to the project design, materials to be used in the construction, and the construction schedule and building layout, all of which caused Tip Top to incur many unforeseen and additional costs and delays not covered in the Tip Top's Subcontract with CMGC. Tip Top gave notice and reserved its right to claim for the delays and additional unforeseen costs that Tip Top would incur as a result of the unforeseen delays and changes to the project schedule and design. Tip Top furnished an accounting of the additional costs for which Tip Top is entitled to recover to CMGC on March 14, 2016.

27. CMGC did not perform quality control duties or inspections in accordance with the contract manual and as required by the Prime Contract, and it did not submit any

4

reports, findings, quality control notices or specific work, material or administrative deficiencies to Tip Top at any time during Tip Top's performance on the project.

28. Tip Top procured all material and provided CMGC with all submittals in accordance with the project manual.

29. CMGC and the National Park Service assured Tip Top that the government's "Contracting Officers Technical Representative" (COTR) would be on the project site, full time, during the construction of the SARI Outpost Building for quality assurance and contract administrative purposes to minimize project delays. The COTR was not on the project full time as agreed during Tip Top's construction of the SARI Outpost Building, which contributed to delays in performance and additional costs to Tip Top.

30. Tip Top's line item proposal and its basis for the Subcontract agreement price to CMGC, required that all work items included in Tip Top's proposal would have to be completed, in order to maintain the scale of economy for the unit pricing that Tip Top proposed.

31. Tip Top has performed work under the Subcontract; however, CMGC still owes Tip Top the sum of Three Hundred and Five Thousand and One Dollars and Fifty Cents ($305,001.50) under the Construction Contract.

32. Endurance, as surety for CMGC, issued payment bond #EAIC141500246 ("Payment Bond") binding itself for payments due and owing for labor and materials furnished and used by subcontractors of CMGC in performing the work on the Project. The Payment Bond was in the amount of $1,288,271.00.

33. Tip Top has made pre-litigation demand on both CMGC and Endurance for the amounts due and owing Tip Top under the Subcontract. However, to date both have

failed to respond to the notices of claim, and Tip Top remains unpaid. Tip Top has therefore been compelled to commence litigation to recover the monies due and owing under the Subcontract.

34. Tip Top's date of last work and or materials supplied on the Project was May 29, 2016; more than ninety (90) days have passed since Tip Top's last work or materials supplied.

35. Within 90 days of the date on which labor and materials were last supplied, Tip Top, pursuant to United States Code Title 40, Section 3131 et seq., served written notice upon CMGC and Endurance of Tip Top's claim for the amount owed by CMGC for materials, equipment and labor furnished in the prosecution of the work provided for in the primary contract. That notice accurately stated the amount claimed and the name of the party to whom the material, labor and equipment was furnished, and otherwise complied with the provisions of the aforesaid statue. Tip Top's notice went unanswered and undisputed by the Defendants.

## COUNT I (Breach of Contract)

36. Tip Top repeats and realleges the allegations contained in Paragraphs 1 through 35 as if set forth in full herein.

37. Tip Top has performed its obligations under the Subcontract.

38. CMGC has breached the Subcontract in that it failed and refused to pay Tip Top in full for labor, services and materials furnished in the prosecution of the work provided for in the Subcontract.

39. CMGC has further breached the Subcontract by soliciting a cure for alleged deficiencies and project delays which were out of Tip Top's control. CMGC did not provide Tip Top with the appropriate information required to prepare a meaning response to

6

CMGC's request for cure.

40. CMGC breached the Subcontract agreement by wrongfully terminating the agreement without reasonable cause and without providing Tip Top due process.

41. CMGC has breached Section 10(A) of the Subcontract by failing to issue Tip Top fair and equitable Subcontract time extensions that CMGC received from the National Park Service, and by failing to provide Tip Top with Subcontract time extensions for excusable delays.

42. As a direct and consequential result of CMGC's breach of the Subcontract, Tip Top has incurred financial hardships, lost profits and monetary damages including, but not limited to the Three Hundred and Five Thousand and One Dollars and Fifty Cents ($305,001.50) amount owed for completed work and Three Hundred and Fifty Thousand Four Hundred and Forty Five Dollars and Forty Five Cents ($350,445.45) for suspension and delays costs incurred.

## COUNT II

### (48 CFR 52.232-27(e) Prompt Payment for Construction Contracts)

43. Tip Top repeats and realleges the allegations contained in Paragraphs 1 through 42 as if set forth in full herein. CMGC's prime Contract with the National Park Service is subject to 48 CFR 52.232-27 (e).

44. Tip Top has performed obligations under the Subcontract and is entitled to payment for the work performed.

45. CMGC violated 48 CFR 52.232-27 (e), when it failed to make payment to Tip Top within seven days of it receiving payment from the government for Tip Top's completed Subcontract work, and by not complying with procedures mandated by 48 CFR 52.232-27 (e).

46. CMGC has not paid Tip Top for its completed work and has stated, through its attorney, that it is going to withhold and control amounts due to Tip Top until the complete contract is completed.

47. Tip Top is entitled to interest, penalties and attorneys' fees.

## COUNT III

### (48 CFR 52.232-27(g)(1) Prompt Payment for Construction Contracts)

48. Tip Top repeats and realleges the allegations contained in Paragraphs 1 through 47 as if set forth in full herein.

49. CMGC's prime Contract with the National Park Service is subject to 48 CFR 52.232-27 (g)(1).

50. CMGC violated 48 CFR 52.232-27(g)(1) when it failed to make payment to Tip Top within seven days of its receipt of payment from the government for Tip Top's completed Subcontract work, and by failing to comply with procedures mandated by 48 CFR 52.232-27(g)(1).

## COUNT IV

### (48 CFR 52.232-27(h) Prompt Payment for Construction Contracts)

51. Tip Top repeats and realleges the allegations contained in Paragraphs 1 through 50 as if set forth in full herein.

52. CMGC's prime Contract with the National Park Service is subject to 48 CFR 52.232-27(h).

53. Defendant violated 48 CFR 52.232-27(h), when it requested payment from the government for Tip Top's earned work on the Project, and when it withheld amounts due to Tip Top indefinitely. CMGC was not to request payment from the National Park Service until such time that the defendant has determined and certified that Tip Top is

entitled to the payment of such amount.

## COUNT V (Quantum Meruit/Unjust Enrichment)

54. Tip Top repeats and realleges the allegations contained in Paragraphs 1 through 53 as if set forth in full herein.

55. Tip Top provided valuable labor, services and materials that were necessary for CMGC to perform and complete its obligations under the prime contract with the National Park Service for work on the Project.

56. CMGC has benefited from Tip Top's labor, services and materials, including but not limited to the fact that CMGC could not have fully performed and completed its obligations under the prime contract with the National Park Service in the absence of the labor, services and materials provided by Tip Top.

57. CMGC has failed and refused to pay Tip Top the monies due and owing for the labor, materials and services provide; in addition, the Defendant directed Tip Top to proceed with work tasks, design and overrunning the volume of Tip Top's subcontracted bid quantities which were additional costs or ultra vires and not part of Tip Top's subcontracted scope of work.

58. As a direct and consequential result of its wrongful acts, CMGC has been unjustly enriched by the provision of Tip Top's labor, services, equipment, materials and intellectual property, and Tip Top has been correspondingly damaged.

59. The fair and reasonable value of such labor, materials, equipment and services by which CMGC has been unjustly enriched in an amount which exceeds $52,450.00.

## COUNT VI (Miller Act Payment Bond)

60. Tip Top repeats and realleges the allegations contained in Paragraphs 1

9

through 59 as if set forth in full herein.

61. More than 90 days but less than one year has elapsed since Tip Top last provided labor or materials on the Project.

62. Endurance is obligated, pursuant to the Payment Bond, to pay Tip Top for the labor, materials, equipment and services it furnished in the prosecution of work on the Project as a result of CMGC's failure to pay for this work.

63. Pursuant to the Miller Act, 40 U.S.C. § 3133, et seq., Tip Top is entitled to file suit against the payment bond issued by Endurance, in federal district court, to collect the money that it is owed by CMGC.

64. Pursuant to the Miller Act, 40 U.S.C. § 3133, et seq., Tip Top is entitled to recover from Endurance the amount claimed and owed to Tip Top under its Subcontract, as well as the attorneys' fees and other expenses incurred in collecting the amount due.

**COUNT VII (Breach of Implied Covenant of Good Faith and Fair Dealing)**

65. Tip Top repeats and realleges the allegations contained in Paragraphs 1 through 64 as if set forth in full herein.

66. Defendants violated and breached the implied covenant of good faith and fair dealing by failing to grant Tip Top change orders for time extensions and other work for which the National Park Service granted to CMGC.

67. Endurance American Insurance Company failed to deal with Tip Top fairly by not forwarding its insurance claims, addresses, points of contacts and proprietary claims forms to Tip Top to allow Tip Top to file a claim against the surety bonds, which caused Tip Top undue hardship and damages.

68. CMGC conducted telephone conferences with Tip Top regarding the project schedule and cure notices that were issued to Tip Top by CMGC which were

misleading and which breached CMGC's duty of fair dealing and good faith.

69. CMGC made promises to Tip Top which it did not uphold.

70. CMGC unreasonably terminated Tip Top's Subcontract, causing Tip Top to lose over $227,964.64 of revenues and profit, further breaching its duty of fair dealing and good faith.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Tip Top prays and requests that this Court:

A. As to Count I, enter judgment against Defendant CMGC on Count I in the amount of six hundred fifty-five thousand, four hundred forty six dollars and 45 cents ($655,446.45), plus interest, costs and attorney fees;

B. As to Counts II-IV, enter judgment in Tip Top's favor in an amount to be proved at trial, and for the penalty set forth in the regulations, as well as interest, costs and attorney fees;

C. As to Count VI, enter judgment in favor of Tip Top against Endurance American Insurance Company under the terms of the Bond and pursuant to the Miller Act, 40 U.S.C. § 3133 in an amount to be proven at trial, but which is currently estimated to be six hundred fifty-five thousand, four hundred forty six dollars and 45 cents ($655,446.45), plus interest, costs and attorney fees.

D. As to Counts I-VII, award Tip Top such additional relief which this honorable Court finds it to be entitled.

E. As to Count VII, enter judgment against Defendant CMGC on Count VII in the amount of two hundred twenty-seven thousand, nine hundred sixty four dollars and 62 cents ($227,964.62), plus interest, costs and attorney fees.

Respectfully submitted,

**DUDLEY, TOPPER AND FEUERZEIG, LLP**

**DATED**: May 25, 2017   By:   /s/ Stefan B. Herpel
**STEFAN B. HERPEL** (V.I. Bar No. 1019)
Law House
1000 Frederiksberg Gade
P.O. Box 756
St. Thomas, U.S.V.I.   00804-0756
Telephone:   (340) 774-4422
Telecopier:   (340) 715-4400
E-Mail:   sherpel@dtflaw.com

Attorneys for Tip Top Construction Corporation

R:\DOCS\2968\999\PLDG\179140702.DOCX