IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA f/u/b/o TIP TOP CONSTRUCTION CORP.<br><br>Plaintiff,<br><br>vs.<br><br>CMGC BUILDING CORP. and ENDURANCE AMERICAN INSURANCE COMPANY,<br><br>Defendants. | CIVIL NO. 1:17-CV-0026 |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION TO GRANT PARTIAL SUMMARY JUDGMENT TO DEFENDANTS**

Defendants CMGC Building Corp. ("CMGC") and Endurance American Insurance Company ("Endurance") (collectively, the "Defendants"), by and through undersigned counsel, hereby file their response to Plaintiff Tip Top Construction Corp.'s ("Tip Top") Objections to the Magistrate Judge's Report and Recommendation pursuant to Fed. R. Civ. P. 72(b)(2). The Magistrate Judge's Report and Recommendation advised the District Court to dismiss Counts II, III, and IV of the Complaint, and to grant Defendants' Motion for Partial Summary Judgment, on the breach of contract delay damages claim under Count I, and the quantum meruit/unjust enrichment claim under Count V. The Magistrate Judge committed no error of law and thus the Court should adopt the recommendations *in toto*.

1

## INTRODUCTION

The Magistrate Judge's Report and Recommendation to dismiss Counts II, III, and IV of the Complaint is without objection and should therefore be adopted by the Court.

As to the grant of partial summary judgment, the Magistrate Judge's comprehensive and well-reasoned decision properly applied New Hampshire law to render judgment on Tip Top's claim for breach of contract with respect to the delay damages. New Hampshire recognizes the near universal precept that "where the plain language of a contract is clear and unambiguous, the parties' intent must be derived from the plain meaning of its terms."[1] The Magistrate Judge recognized that pursuant to this principle, a plain reading of the July 2015 Master Subcontract and Job Order (the "Subcontract")[2] between CMGC and Tip Top precluded recovery of delay damages by Tip Top unless CMGC first recovered those damages from NPS on its behalf pursuant to the delay damages clause under § 10.B of the Subcontract.[3] The Magistrate Judge correctly held that because New Hampshire law did not prohibit such a clause, and no public policy exception applied, it was enforceable as it was plainly written.[4]

The Magistrate Judge also correctly applied the standard for summary judgment, which requires the Court to draw all "*reasonable* inferences in favor of the non-moving party." *Seamans v. Temple Univ.*, 744 F.3d 853, 859 (3d Cir. 2014) (citations omitted). The factual record could not sustain a reasonable inference that Tip Top could not demobilize unless ordered to do so by CMGC due to the "time is of the essence" clause in the Subcontract at 5.A. Not only do the terms

---

[1] Dkt. No. 125 at 5 (citing *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 525 (V.I. 2017); 11 Williston on Contracts § 32.2)). The Magistrate Judge recognized that the same law was nearly universal and applied in New Hampshire. Report and Recommendation ("R&R") at 15.

[2] Subcontract cited at Dkt. No. 126 (Defendants' Statement of Material Facts) ¶¶ 1, 2.

[3] R&R at 17.

[4] R&R at 17-18.

of the Subcontract not support such a claim, but as the Magistrate Judge recognized, written communications from Tip Top to CMGC showed that Tip Top was well aware of the expected delay until at least the following year and that Tip Top intended to suspend its own work during the Thanksgiving break in recognition of the expected delay.[5]

Nor could a fact-finder reasonably conclude that CMGC lacked good grounds to deny certification of Tip Top's claim for delay damages pursuant to the Contract Disputes Act (CDA) where the record showed that NPS had reviewed and deemed Tip Top's costs unacceptable and unreasonable, that CMGC agreed with NPS's determination, and that these concerns had been expressed to Tip Top. CMGC was therefore unwilling, and under no obligation, to expose itself to CDA liability by standing behind Tip Top's unsustainable claims.[6]

The Magistrate Judge's recommendation to dismiss Tip Top's quantum meruit claims is a correct application of law as construction of the boat ramp was undisputedly a component of the Subcontract.[7] Finally, the Magistrate Judge correctly interpreted the law as applied to find that the letter dated November 23, 2015 from CMGC did not modify the Subcontract to excise the limitations on damages clause under § 10.B.[8]

## LEGAL STANDARD OF REVIEW

CMGC is in accord with the applicable standard of review of the Magistrate Judge's Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) as set forth by Tip Top. However, Tip Top's insistence that it is entitled to every favorable inference on summary judgment is belied by

---

[5] R&R at 6 (citing October 16, 2015 and November 21, 2015 letters from Tip Top showing its awareness of the delay and intent to plan according to its own convenience.)

[6] R&R at 23-24.

[7] R&R at 25-26.

[8] R&R at 27.

well-established case law construing Fed. R. Civ. P. 56. As the Third Circuit Court of Appeals has recognized, the non-moving party is only entitled to "every *reasonable* inference that can be drawn from the record," *Seamans*, 744 F.3d at 859 (quoting *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (emphasis added)). Indeed, the non-movant is not entitled to "every conceivable inference." *De Valk Lincoln Mercury, Inc.* v. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987). "The opponent of a motion for summary judgment 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Delaware v. Pennsylvania, Nos. 220145, 220146*, 2021 U.S. LEXIS 6295, at *40 (July 23, 2021) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586(1986)). Indeed, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). "A disputed issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Cohen v. Horn*, No. 22-2148, 2022 U.S. App. LEXIS 34038, at *5 (3d Cir. Dec. 9, 2022) (quoting *Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 871 n.3 (3d Cir. 2015)). "If the evidence is merely colorable, . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## ARGUMENT

I.  **The Magistrate Judge Correctly Applied the Law of Contracts to Uphold the Delay Damages Provision in § 10.B of the Subcontract.**

   A.  **The Magistrate Judge Correctly Determined that the Delay Damages Provision in § 10.B of the Subcontract was not barred as an Exculpatory Clause.**

The Magistrate Judge found that CMGC had correctly stated the applicable law in its Motion for Partial Summary Judgment: "where the plain language of a contract is clear and unambiguous, the parties' intent must be derived from the plain meaning of its terms."[9] The Magistrate Judge also properly noted that New Hampshire law does not preclude no-damages-for-delay ("NDFD") clauses.[10] Tip Top disputes neither of these propositions. Instead, it insists that Defendant CMGC was obligated to show that under New Hampshire law, this so-called "exculpatory" clause was enforceable and that the Magistrate Judge erred by granting summary judgment in the absence of such analysis.[11] However, the Magistrate Judge, citing case law offered by Tip Top, correctly determined that New Hampshire would not prohibit the "exculpatory" clause in the Subcontract because there was no "special relationship" between CMGC and Tip Top as defined under New Hampshire law.[12] Tip Top offers a convoluted argument on how its reliance on CMGC to submit its delay damages claims (which CMGC did and NPS refused to pay) created a "special relationship" and completely ignores the focus on the requirements articulated by New Hampshire courts that the unenforceability be in the interests of the "public" welfare or avoidance of harm stemming from injury to person or property. As the Magistrate Judge recognized:

> New Hampshire courts have found exculpatory clauses unenforceable if they are "injurious to the interest of the public, violate[] some public statute, or tend[] to interfere with the public welfare or safety." *McGrath v. SNH Dev., Inc.*, 969 A.2d 392, 396 (N.H. 2009). A "special relationship" exists "where the defendant is a common carrier, innkeeper or public

---

[9] R&R at 15.

[10] R&R at 17. CMGC reiterates its contention in its Reply to Tip Top's Opposition to Summary Judgment that § 10.B of the Subcontract is not a "no-damages-for-delay" clause as that term is typically used; in this case delay damages are recoverable by the Subcontractor but contingent on recovery of the same by the Contractor on Subcontractor's behalf.

[11] CMGC takes issue also with the use of the term "exculpatory" clause in relation to § 10.B of the Subcontract as this does not constitute a release of liability for harm done by CMGC to Tip Top but rather states the terms of payment for delay damages and is a common feature of subcontracts. *See Dartmouth Coll. v. N. Branch Constr., Inc*., No. 2009-CV-00152, 2014 N.H. Super. LEXIS 4, at *7-8 (Mar. 24, 2014) (identifying exculpatory contracts as those that "reliev[e] a person from the consequences of his common-law duty to exercise ordinary care").

[12] R&R at 18.

utility, or is otherwise charged with a duty of public service," *id*. at 397 (internal quotation marks omitted), or "if the defendant provides a service that is of great importance to the public or is a matter of practical necessity," *Ladue*, 247 A.3d 367, 371.

R&R at 18. Other New Hampshire cases have also elucidated the focus on the "duty of care" associated with tort cases. *See Dartmouth Coll. v. N. Branch Constr., Inc*., No. 2009-CV-00152, 2014 N.H. Super. LEXIS 4, at *7-8 (Mar. 24, 2014) (quoting *Tanguay v. Marston*, 127 N.H. 572, 577, 503 A.2d 834 (N.H. 1986) ("The New Hampshire Supreme Court has long held that while exculpatory contracts*, relieving a person from the consequences of his common-law duty to exercise ordinary care*, are prohibited: '[w]here parties to a contract are free to make their own bargain, and no special relationship exists between them, a clause fully exculpating one party for property damage due to its negligence in the performance of a contract is valid and will be enforced.'") (emphasis added); *Allen v. Dover Co-Recreational Softball League*, 148 N.H. 407, 413, 807 A.2d 1274 (N.H. 2002) ("Although New Hampshire law generally prohibits a plaintiff from releasing a defendant from liability for *negligent* conduct, in limited circumstances a plaintiff can expressly consent by contract to assume the risk of injury caused by a defendant's negligence.") (emphasis added)). There is no support for the proposition that limitations on delay damages recovery in a commercial contract constitutes an exculpatory clause that must be defended by the party relying on it in litigation. *See, e.g., Dartmouth Coll. v. N. Branch Constr., Inc.*, No. 2009-CV-00152, 2014 N.H. Super. LEXIS 4, at *7-8 (Mar. 24, 2014) ("The statutory prohibition of any exculpatory agreements . . . is not intended to prohibit parties from negotiating the extent of their rights and liabilities."); *Tanguay v. Marston*, 127 N.H. 572, 577, 503 A.2d 834, 837 (N.H. 1986) (citing *Shaer Shoe Corporation v. Granite State Alarm, Inc*., 110 N.H. 132, 135, 262 A.2d 285, 287 (N.H. 1970) (recognizing that in New Hampshire, "[w]here the parties to a contract are free to make their own bargain, and no special relationship (such as landlord-tenant or common carrier-

6

passenger) exists between them, a clause fully exculpating one party for property damage due to its negligence in the performance of a contract is valid and will be enforced."). Notably, these cases refer to tort actions involving damage to persons or property – further distancing themselves from the contract case that is before the Court.

> B. **The Magistrate Judge Correctly Found that the Active Interference Doctrine Based on Florida Law Did Not Void § 10.B of the Subcontract**.

The Magistrate Judge correctly found that the so-called active interference principle cited by Tip Top did not operate to bar § 10.B in the Subcontract. Tip Top argued that this principle as set forth in *United States v. David Boland, Inc.*, No. 6:05-cv-549-Orl-19JGG, 2006 U.S. Dist. LEXIS 66568, at *11-13 (M.D. Fla. Sep. 16, 2006) (construing Florida State law and finding delay must be "knowing" and "egregious") applied to bar application of § 10.B. The active interference principle has not been applied in New Hampshire, nor would it be applicable in this case even if recognized in this jurisdiction. Moreover, Tip Top attempts to reduce this standard to one of "unreasonableness," but such a standard was not articulated in *David Boland*, which found that Florida barred application of delay damages clauses based on active interference that involves "a "knowing delay" which is "sufficiently egregious." *Id*. at *11-13 (citations omitted). The court in *David Boland* rejected a lesser standard, noting that "[m]ere lethargy or instances of bureaucratic bungling is insufficient as a matter of law to overcome a valid no damages for delay clause." *Id*. (internal quotations and citations omitted). The *David Boland* standard goes beyond the negligence standard of unreasonable and implies intent is required.

Importantly, notwithstanding its claim that there are "material facts" as to whether CMGC caused Tip Top to incur delay costs, Tip Top has failed to cite any fact, disputed or otherwise, that shows that CMGC delayed its work, as both parties agree that NPS's failure to get authorization

7

for vertical construction was the cause of the delay.[13] Tip Top then erroneously asserts that the active interference doctrine should be applied because CMGC failed to submit its claim under the CDA.[14] First of all, this would be an erroneous application of the "active interference" doctrine, which according to case law cited by Tip Top, has been applied in instances where there is interference with completing a construction project, not with a refusal to submit a disputed claim under the CDA or otherwise.[15] Secondly, in its Opposition to CMGC's Motion for Summary Judgment, Tip Top failed to identify any disputed fact as to CMGC's reason for not certifying the claim, instead merely alluding to a "cover-up" that was purportedly intended to prevent NPS from knowing no demobilization order had been given to Tip Top by CMGC. The Magistrate Judge rightly rejected Tip Top's speculation concerning a "cover up" because "a plaintiff cannot satisfy the summary judgment burden based on speculation alone."[16] In contrast, CMGC cited facts establishing why it did not submit the claim for a CDA review: CMGC expressed to Tip Top that its costs for daily rates for items left idle on the construction were "obscene" and not in conformity with industry standards,[17] which was reinforced by NPS's rejection of Tip Top's claim, another

---

[13] See Dkt. 126, CMGC's Statement of Undisputed Material Facts, ¶ 3; Dkt. 136, Tip Top's Response to CMGC's Statement of Undisputed Material Facts, ¶ 3.

[14] See Dkt. 149, Tip Top's Objections to the Magistrate's Report and Recommendation ("Objections") at 10-11.

[15] Tip Top relies on the following cases for the "active interference" doctrine: *United States v. David Boland, Inc.*, No. 6:05-cv-549-Orl-19JGG, 2006 U.S. Dist. LEXIS 66568, at *13 -16 (M.D. Fla. Sep. 16, 2006) (analyzing whether failure to respond to requests for information in a timely manner and a delay in ensuring installation of pilings to permit subcontract to being work constituted an active interference vitiating no damages for delay clause); *Newberry Square Dev. Corp. v. S. Landmark, Inc.*, 578 So. 2d 750, 752 (Fla. Dist. Ct. App. 1991) (finding "adequate evidence to present a jury question as to whether Newberry Square actively impeded, or willfully and knowingly delayed, Southern Landmark's ability to timely perform under the contract" where evidence showed that "Newberry Square delayed in providing approved plans and specifications . . . and in . . . executing change orders and required that construction not proceed without such orders. . . [a]nd repeatedly failed to make timely payments required by the contract.").

[16] R&R at 21. Tip Top raises for the first time in its Objections that CMGC did not modify the contract to adjust for delay costs as purportedly promised and that this constitutes evidence that it actively interfered with Tip Top's right to bring a CDA claim. Objections at 11. However, Tip Top does not cite to the record and this is not a material fact that takes its theory of a "cover-up" out of the realm of speculation.

[17] See Dkt. 147, CMGC's Response to Tip Top's Counterstatement of Material Facts, ¶ 46.

undisputed fact. Thus, even if the Court were inclined to apply the active interference doctrine for failure to submit a CDA claim, it would be inappropriate to do so because there is no factual dispute concerning why CMGC refused to re-submit a claim it felt was completely unreasonable and possibly fraudulent.

### C. The Magistrate Judge Correctly Determined that CMGC Was Not Required To Order Tip Top To Demobilize.

As all parties and the Magistrate Judge agree, the plain language of a contract controls. Thus, the Magistrate Judge correctly found that there was no obligation under the Subcontract for CMGC to order Tip Top to demobilize. The "time is of the essence" clause of the Subcontract cited by Tip Top[18] does not create such an obligation for Tip Top to unreasonably remain mobilized on site, especially in light of Tip Top's reasonable decision to suspend work the week of Thanksgiving,[19] just two weeks before the contractual December 3, 2015 completion date, given the known lack of a CSO authorization.[20] Indeed, Tip Top's own words to CMGC in the November 21, 2015 letter signaled its awareness of the extended delay and knowledge that there was no possibility to meet the completion date regardless of whether it demobilized:

> As of the date of this notice we still haven't been given authorization to start the CSO structure. The NPS has indicated to the project superintendent that **the pending CSO authorization probably will not be forthcoming until next year**.
>
> \*\*\*
>
> As a result of the extremely delayed project schedule and the lack of authorization required to start the CSO structure from the NPS **we will be forced to suspend work this week commencing at the start of Thanksgiving break**.
>
> \*\*\*

---

[18] Objections at 13.

[19] R&R at 6 (citing October 16, 2015 and November 21, 2015 letters from Tip Top showing its awareness of the delay and intent to plan according to its own convenience.)

[20] Objections at 13.

> We are advising you once again, that the unforeseen delays that we are experiencing in starting the CSO structure as of no fault of Tip Top will **prevent us from meeting the project's original completion date this year**.

Dkt. 138-4, Letter from Tip Top to CMGC dated Nov. 21, 2015.[21]

Nor can Tip Top unilaterally impose a requirement on CMGC to assume the obligation to order demobilization simply by writing a letter wherein it stated "We will assume that we are not required to demobilize the project and will remain in a standby status with our work forces and equipment that is allocated to the job unless you or the NPS directs us otherwise."[22] Accordingly, the plain language of the Subcontract controls and the Magistrate Judge's correctly found that the Subcontract did not impose a duty on CMGC to advise Tip Top to demobilize.

### D. The Magistrate Correctly Determined that the Letter Dated November 23, 2015 Did Not Constitute A Modification of the Subcontract.

Tip Top complains that the Magistrate Judge rendered a factual determination against Tip Top by deciding that the Letter dated November 23, 2015 did not constitute a modification of the Subcontract. However, a non-moving party cannot defeat summary judgment where the evidence would not permit a reasonable fact-finder to rule in favor of the non-moving party. *Cohen*, 2022 U.S. App. LEXIS 34038, at *5. As discussed *ad nauseam* in prior pleadings as well as in the Magistrate Judge's Report and Recommendation, the sole evidence cited by Tip Top for the purported modification was a single sentence in a letter from CMGC's project manager in response to Tip Top's notice of increased costs due to delay,[23] which read,

---

[21]Moreover, the NPS letter to CMGC (but not Tip Top) dated December 10, 2015 predicting a "determination" Federal Consistency for the Coastal Studies Outpost by mid-December could not have resulted in a start work order for December 10, 2015 for Tip Top (as argued by Tip Top in its Objections at 15). Regardless of this letter, there was no communication to Tip Top in December that resumption of work was imminent, and, the completion date had already passed.

[22] Dkt. 138-4, Tip Top Letter to CMGC dated Nov. 21, 2015.
[23] *Id.*

10

Once all of the outstanding issues are resolved with the building location, existing slab foundation and the NPS permitting we will develop a new schedule allowing you ample time to complete the remaining work. **A contract modification will be used to adjust the contract time and any cost**.[24]

As the Magistrate Judge recognized, Tip Top did not offer any evidence in support of such an interpretation but merely argued that

> [T]his letter modified the subcontract and created an obligation on the part of CMGC to issue a contract modification that adjusted both the contract time and "any cost." Thus the NDFD clause was modified by the November 23, 2015 letter as it applied to this particular delay in construction.[25]

As the Magistrate Judge recognized, "Tip Top's two-sentence conclusory argument, without legal or factual support, does not even provide, much less examine, the requirements for contract modification" which includes showing mutual assent.[26] Accordingly, given Tip Top's failure to cite any evidentiary basis for a sweeping modification of the Subcontract (it argued in Opposition that CMGC agreed to pay "*any* cost" for the delay, apparently without regard to how unreasonable or fraudulent the demand might be) other than the correspondence cited above, the Magistrate Judge's finding that the evidence cited by Tip Top failed to establish a modification of § 10.B of the Subcontract was correct.

## II. The Magistrate Judge Correctly Determined That Tip Top Failed to State a Claim For Quantum Meruit.

Tip Top claims that the Magistrate Judge shifted the burden to Tip Top to avoid dismissal of the quantum meruit claim because CMGC was obliged to present evidence of a change order covering the boat ramp modification. There is no disputed material fact that pursuant to the

---

[24] Dkt. 138-5, Exhibit 5 to Tip Top Counterstatement of Material Fact, Letter from CMGC Project Manager David Kolker to Tip Top; see also Dkt. 147, CMGC Response to Tip Top's Counterstatement of Material Fact, ¶ 19 (citing the letter of 11/23/15).

[25] Dkt. 137, Tip Top's Memorandum in Opposition to CMGC's Motion for Partial Summary Judgment at 19-20.

[26] R&R at 27.

11

Subcontract, Tip Top was to construct a boat ramp.[27] Moreover, Tip Top did not identify the construction of the boat ramp in its Complaint as a claim brought pursuant to quantum meruit.[28] Thus, Tip Top was obligated to challenge the factual record concerning the boat ramp. It failed to properly do so. Instead, Tip Top challenges the Magistrate Judge's findings based on allegations in its Complaint (¶¶ 15-18). However, a non-movant cannot defeat summary judgment by relying on mere allegations in its pleading. *Brown v. SEPTA*, 539 F. App'x 25, 27 (3d Cir. 2013) (citing *GFL Advantage Fund, LTD v. Colkitt*, 272 F.3d 189,199 (3d Cir. 2001) (applying the rule that "the nonmoving party cannot rely only on allegations in the complaint to defeat summary judgment"). Accordingly, the quantum meruit should be dismissed in accord with the Magistrate Judge's Report and Recommendation.

## CONCLUSION

For the reasons stated above, the Magistrate Judge's Report and Recommendation should be adopted by the District Court to dismiss Counts II, III, IV and V and to grant summary judgment on the damages delay claim in the breach of contract claim asserted in Count I.

Respectfully submitted,

**Beckstedt & Kuczynski LLP**
*Attorneys for Defendants*
2162 Church Street
Christiansted, VI 00820
Tel: (340) 719-8086

Dated:  January 10, 2023          By:     s/ Carl A. Beckstedt III
                                          Carl A. Beckstedt III, Esq.
                                          V.I. Bar No. 684
                                          carl@beckstedtlaw.com

---

[27] Dkt. 138, Tip Top in its Counterstatement of Material Fact ¶ 10 (citing CMGC letter to Tip Top concerning the boat ramp); Dkt. 146, CMGC Response to Tip Top RSUMF, ¶ 14, (citing Frank Swanson's acknowledgment that NPS paid for the original cost under the original contract amount allotted for a boat ramp).

[28] Complaint at ¶¶ 54-59.